UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JOHN KEDNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHERN RESPONSE SERVICES, INC., a Domestic Corporation, and ROBERT L. DUKE II, individually,<br><br>Defendants. | CIV. A. NO. 19-913<br><br>JURY TRIAL DEMANDED |

## COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### SUMMARY

1. JOHN KEDNEY ("Kedney" or "Plaintiff") brings this lawsuit to recover unpaid overtime wages and other damages from SOUTHERN RESPONSE SERVICES, INC. ("SRSI"), and ROBERT L. DUKE II ("Duke") (collectively "Southern Response" or "Defendants") under the provisions of section 216(b) of the Fair Labor Standards Act (FLSA), as amended 29 U.S.C. §§ 201, *et seq*.

2. Kedney and those similarly situated regularly worked for Defendants in excess of 40 hours each week. As shown below, Defendants failed to properly compensate Kedney and all other similarly situated workers.

3. Instead, during the relevant time period Defendants paid Kedney, and other workers like him the same hourly rate for all hours worked, including those hours over 40 in a workweek (or, "straight time for overtime").

1

## JURISDICTION AND VENUE

4.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6.     The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The Court also has supplemental jurisdiction over any sub-class pursuant to 28 U.S.C. § 1367.

7.     SRSI is headquartered in this district and division.  Specifically, SRSI maintains its principal place of business at 5809 U.S. Hwy 43, Satsuma, Alabama.

## PARTIES

8.     Kedney is a resident of Mississippi.  His written consent is attached as **EXHIBIT A**.

9.     Kedney worked as a laborer for Defendants from approximately August 2018 until October 2018 in North Carolina.

10.    Kedney performed disaster relief work following several storms that inflicted catastrophic damage in the areas they affected.

11.    Kedney was an hourly employee of Southern Response.

12.    Kedney was not paid a salary.

13.    Kedney was paid the same hourly rate regardless of the number of hours he worked.

14.    Kedney was not paid overtime for hours worked over 40 in a workweek.

15.    Kedney brings this action individually and on behalf of all other similarly situated workers who were paid straight time for overtime by Defendants.  The class of similarly situated employees or potential class members sought to be certified is defined as follows (the "FLSA Class"):

> **All employees of Southern Response who were paid straight time for overtime.**

16.     The FLSA Class Members are collectively referred to as the "Putative Class Members."

17.     At all times relevant hereto, Defendant Duke was a citizen of Creola, Alabama.

18.     At all times material hereto, Duke was engaged in business in the State of Alabama.

19.     At all times material hereto, Duke owned and operated SRSI.

20.     At all times material hereto, Duke regularly held and/or exercised the authority to hire and fire employees of SRSI.

21.     At all times material hereto, Duke regularly held and/or exercised the authority to determine the work schedules for the employees of SRSI.

22.     At all times material hereto, Duke regularly held and/or exercised the authority to control the finances and operations of SRSI.

23.     At all times material hereto, Duke was an employer as defined by 29 U.S.C. 201 *et. seq*.

## COVERAGE UNDER THE FLSA

24.     At all times hereinafter mentioned, Southern Response has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25.     At all times hereinafter mentioned, Southern Response has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26.     At all times hereinafter mentioned, Southern Response has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as construction equipment, hand tools, computers, automobiles, and cell phones – by any person

and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

27. At all times material hereto, Southern Response operated simultaneously in two or more states.

28. At all times hereinafter mentioned, Kedney and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

29. Southern Response is a staffing company which provides emergency response services and industrial contract staffing, among other services. *See* http://www.southernresponse.com/our-services/

30. According to its website, "Southern Response Services' primary goal is to provide the highest quality and the most cost-effective training to industrial emergency response teams." *See id.*

31. Following the massive devastation caused by multiple natural disasters, FEMA and other state and federal governmental departments implemented programs to provide aid and repairs to various effected areas.

32. Southern Response was tasked with providing skilled and unskilled labor to assist in these relief efforts.

33. To implement this work, the Southern Response hired workers such as Kedney to perform skilled and manual labor in the affected areas.

34. Southern Response paid Kedney and the Putative Class Members the same hourly rate for all hours worked and regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

35. Southern Response's pay practices violate the FLSA.

36. Kedney and the Putative Class Members generally provided labor and construction services in connection with disaster relief efforts following various natural disasters.

37. Kedney and the Putative Class Members had no power to hire or fire other workers. All aspects of their work were controlled by Southern Response. Southern Response retained the authority to hire and fire, they issued pay, supervised, controlled, and directed Kedney and the Putative Class Members, and it controlled all aspects of Kedney and the Putative Class Members' job activities.

38. Southern Response set Kedney and the Putative Class Members' rates of pay and work schedule.

39. The job functions of Kedney and the members of the Putative Class were primarily manual labor/technical in nature, requiring little to no official training or other advanced degree.

40. The members of the Putative Class did not have any supervisory or management duties. Finally, for the purposes of their overtime claims, the members of the Putative Class performed substantially similar job duties related to construction and infrastructure support in the affected areas.

41. All of the members of the Putative Class performed the same or similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

42. The members of the Putative Class also worked similar hours and were denied overtime as a result of the same illegal pay practice. They all worked in excess of 40 hours each week and were often scheduled for 12-16 hour shifts for weeks at a time. Instead of paying them overtime, Southern Response paid the members of the Putative Class straight time for overtime.

43. Southern Response's policy of failing to properly pay its employees, including

Kedney, violates the FLSA because these workers are employees performing non-exempt job duties.

## FLSA VIOLATIONS

44. As set forth herein, Southern Response has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

45. Southern Response knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Southern Response's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

46. Southern Response was aware that relief workers like Kedney were entitled to time and one half their regular rate of pay for all hours worked in excess of 40 per workweek and deliberately failed to pay them such overtime premiums nonetheless.

47. Accordingly, Kedney and the Putative Class Members are entitled to overtime wages, plus liquidated damages, attorney's fees and costs.

## COLLECTIVE ACTION ALLEGATIONS

48. Kedney incorporates all previous paragraphs and alleges that the illegal pay practices Southern Response imposed on Kedney were likewise imposed on the Putative Class Members.

49. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

50. Numerous other individuals who worked with Kedney indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

51. Based on their experiences and tenure with Southern Response, Kedney is aware that Southern Response's illegal practices were imposed on the Putative Class Members.

52. Southern Response's failure to pay appropriate wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

53. Kedney's experiences are therefore typical of the experiences of the Putative Class Members.

54. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

55. Kedney has no interests contrary to, or in conflict with, the Putative Class Members. Like each member of the Putative Class, Kedney has an interest in obtaining the unpaid overtime wages owed under federal law.

56. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

57. Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and Southern Response will reap the unjust benefits of violating the FLSA.

58. Furthermore, even if some of the members of the Putative Class could afford individual litigation against Southern Response, it would be unduly burdensome to the judicial system.

59. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

60. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a)     Whether Southern Response employed the members of the Classes within the meaning of the FLSA;

    b)     Whether Southern Response's decision to not pay the correct amount for overtime to the members of the Classes was made in good faith;

    c)     Whether Southern Response's decision to pay employees straight time for overtime was made in good faith;

    d)     Whether Southern Response's violation of the FLSA was willful; and

    e)     Whether Southern Response's illegal pay practices were applied uniformly to all members of the Classes.

61.     Kedney's claims are typical of the claims of the Putative Class Members. Kedney and the Putative Class Members sustained damages arising out of Southern Response's illegal and uniform employment policy.

62.     Kedney knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

63.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

64.     Kedney demands a trial by jury.

### RELIEF SOUGHT

65.     WHEREFORE, Kedney prays for judgment against Southern Response as follows:

    a.     For an Order designating the FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely

    FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.   For an Order pursuant to Section 16(b) of the FLSA finding Southern Response liable for unpaid back wages due to Kedney and the Putative Classes for liquidated damages equal in amount to their unpaid compensation;

c.   For an Order appointing Kedney and his counsel as Class Counsel to represent the interests of the Class;

d.   For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

e.   For an Order granting such other and further relief as may be necessary and appropriate.

Dated: November 4, 2019      Respectfully submitted,

     **/s/ Patrick Montgomery**
     Patrick Montgomery
     Alabama Bar No. MON062
     Morgan & Morgan, P.A.
     63 S. Royal Street, Suite 710
     Mobile, AL 36602
     Telephone: (251) 800-6030;
     Facsimile: (251) 800-6050
     Email: PMontgomery@forthepeople.com

     and

     Andrew R. Frisch, *Pro Hac Vice forthcoming*
     Florida Bar No. 027777
     Morgan & Morgan, P.A.
     8151 Peters Road, Suite 4000
     Plantation, FL 33324
     Telephone: (954) WORKERS
     Facsimile: (954) 327-3013
     Email: AFrisch@forthepeople.com